1
2
3
4
5
6
7

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| LANCE RICHARD RHOADES, | No. 2:16-CV-2544-DMC |
| Plaintiff, | |
| v. | <u>MEMORANDUM OPINION AND ORDER</u> |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

Plaintiff, who is proceeding with retained counsel, brings this action for judicial review of a final decision of the Commissioner of Social Security under 42 U.S.C. § 405(g). Pursuant to the written consent of all parties (Docs. 7 and 11), this case is before the undersigned as the presiding judge for all purposes, including entry of final judgment. <u>See</u> 28 U.S.C. § 636(c). Pending before the court are the parties' cross-motions for summary judgment (Docs. 16 and 19).

The court reviews the Commissioner's final decision to determine whether it is: (1) based on proper legal standards; and (2) supported by substantial evidence in the record as a whole. <u>See</u> <u>Tackett v. Apfel</u>, 180 F.3d 1094, 1097 (9th Cir. 1999). "Substantial evidence" is more than a mere scintilla, but less than a preponderance. <u>See</u> <u>Saelee v. Chater</u>, 94 F.3d 520, 521 (9th Cir. 1996). It is ". . . such evidence as a reasonable mind might accept as adequate to support a conclusion." <u>Richardson v. Perales</u>, 402 U.S. 389, 402 (1971). The record as a whole,

including both the evidence that supports and detracts from the Commissioner's conclusion, must be considered and weighed.  See Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986); Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985).  The court may not affirm the Commissioner's decision simply by isolating a specific quantum of supporting evidence.  See Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989).  If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a particular finding, the finding of the Commissioner is conclusive.  See Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987). Therefore, where the evidence is susceptible to more than one rational interpretation, one of which supports the Commissioner's decision, the decision must be affirmed, see Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002), and may be set aside only if an improper legal standard was applied in weighing the evidence, see Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

## I.  THE DISABILITY EVALUATION PROCESS

To achieve uniformity of decisions, the Commissioner employs a five-step sequential evaluation process to determine whether a claimant is disabled.  See 20 C.F.R. §§ 404.1520 (a)-(f) and 416.920(a)-(f).   The sequential evaluation proceeds as follows:

| | |
|---|---|
| Step 1 | Determination whether the claimant is engaged in substantial gainful activity; if so, the claimant is presumed not disabled and the claim is denied; |
| Step 2 | If the claimant is not engaged in substantial gainful activity, determination whether the claimant has a severe impairment; if not, the claimant is presumed not disabled and the claim is denied; |
| Step 3 | If the claimant has one or more severe impairments, determination whether any such severe impairment meets or medically equals an impairment listed in the regulations; if the claimant has such an impairment, the claimant is presumed disabled and the clam is granted; |
| Step 4 | If the claimant's impairment is not listed in the regulations, determination whether the impairment prevents the claimant from performing past work in light of the claimant's residual functional capacity; if not, the claimant is presumed not disabled and the claim is denied; |

2

|  |  |  |
|---|---|---|
| Step 5 | | If the impairment prevents the claimant from performing past work, determination whether, in light of the claimant's residual functional capacity, the claimant can engage in other types of substantial gainful work that exist in the national economy; if so, the claimant is not disabled and the claim is denied. |

See id.

To qualify for benefits, the claimant must establish the inability to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted, or can be expected to last, a continuous period of not less than 12 months. See 42 U.S.C. § 1382c(a)(3)(A). The claimant must provide evidence of a physical or mental impairment of such severity the claimant is unable to engage in previous work and cannot, considering the claimant's age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. See Quang Van Han v. Bower, 882 F.2d 1453, 1456 (9th Cir. 1989). The claimant has the initial burden of proving the existence of a disability. See Terry v. Sullivan, 903 F.2d 1273, 1275 (9th Cir. 1990).

The claimant establishes a prima facie case by showing that a physical or mental impairment prevents the claimant from engaging in previous work. See Gallant v. Heckler, 753 F.2d 1450, 1452 (9th Cir. 1984); 20 C.F.R. §§ 404.1520(f) and 416.920(f). If the claimant establishes a prima facie case, the burden then shifts to the Commissioner to show the claimant can perform other work existing in the national economy. See Burkhart v. Bowen, 856 F.2d 1335, 1340 (9th Cir. 1988); Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986); Hammock v. Bowen, 867 F.2d 1209, 1212-1213 (9th Cir. 1989).

///

///

///

///

///

///

///

## II.  THE COMMISSIONER'S FINDINGS

Plaintiff applied for social security benefits on January 26, 2011, and May 16, 2011.  See CAR 18.[1]  Plaintiff claims disability began on June 9, 2008, following shoulder injuries sustained in a work-related accident.  See id. at 658-659 (hearing testimony).[2]  Plaintiff's claims were initially denied.  Following denial of reconsideration, plaintiff requested an administrative hearing, which was held on February 28, 2013, before Administrative Law Judge (ALJ) Mark C. Ramsey.  In an April 15, 2013, decision, the ALJ concluded plaintiff is not disabled.  See id. at 18-28.  Plaintiff sought review by this court.  See Rhoades v. Commissioner of Social Security, E. Dist. Cal. Case No. 2:14-CV-1229-CMK.  In an October 22, 2015, memorandum opinion and order, the court remanded for further proceedings.  See id.

On remand, the matter was assigned to the same ALJ, who stated as follows:

> . . .The District Court ordered further consideration to the opinions of Drs. Watkin, Acinas, and Kalen.  It also directed further consideration of the claimant's maximum residual functional capacity and application of the Medical Vocational Rules giving consideration to the use of a vocational expert to determine the effect of all nonexertional limitations (Exhibit 12A/8-19).

> CAR 623.

A second hearing was held on April 7, 2016.  See id.  In a June 2, 2016, decision, the ALJ found plaintiff not disabled based on the following relevant findings:

> 1.  The claimant has the following severe impairment(s): bilateral shoulder injuries status post three surgeries right shoulder;[3] carpal tunnel syndrome post right release surgery; obesity;

> 2.  The claimant does not have an impairment or combination of impairments that meets or medically equals an impairment listed in the regulations;

/ / /

---

[1]  Citations are the to the Certified Administrative Record (CAR) lodged on May 22, 2017 (Doc. 14).

[2]  According to plaintiff, he worked from 1989 through 2008 as a logging equipment operator which involved running a "skidder."  Plaintiff testified that he stopped working after the skidder rolled down a hill and injured his shoulder.  Plaintiff settled a Worker's Compensation claim for $22,000.  See CAR 658-60 (hearing testimony).

[3]  As discussed in more detail herein, the record also reflects surgeries on plaintiff's left shoulder.

1     3.     The claimant has the following residual functional capacity:
             medium work;

2

3     4.     Considering the claimant's age, education, work experience,
             residual functional capacity, and vocational expert testimony there
             are jobs that exist in significant numbers in the national economy
4            that the claimant can perform.

5          See CAR 626-46.

6     After the Appeals Council declined review on September 1, 2016, this appeal followed.

7

8                              **III. DISCUSSION**

9              In his motion for summary judgment, plaintiff argues: (1) the ALJ erred in

10    concluding his depression was not a severe impairment; (2) the ALJ failed to properly evaluate

11    the medical opinions in evaluating his physical residual functional capacity; (3) the ALJ failed to

12    set forth clear and convincing reasons for rejecting his statements and testimony as not credible;

13    (4) the ALJ erred by discrediting lay witness evidence; (5) the vocational expert's testimony did

14    not constitute substantial evidence to support the ALJ's vocational finding; and (6) the matter

15    should be remanded for consideration of new evidence.

16    **A.     Severity Finding**

17             At Step 2, the ALJ evaluated the severity of plaintiff's impairments and found

18    plaintiff's depression non-severe. See id. at 626-32. To qualify for benefits, the plaintiff must

19    have an impairment severe enough to significantly limit the physical or mental ability to do basic

20    work activities. See 20 C.F.R. §§ 404.1520(c), 416.920(c).[4]  In determining whether a claimant's

21    alleged impairment is sufficiently severe to limit the ability to work, the Commissioner must

22    consider the combined effect of all impairments on the ability to function, without regard to

23    whether each impairment alone would be sufficiently severe. See Smolen v. Chater, 80 F.3d

24    1273, 1289-90 (9th Cir. 1996); see also 42 U.S.C. § 423(d)(2)(B); 20 C.F.R. §§ 404.1523 and

25    416.923. An impairment, or combination of impairments, can only be found to be non-severe if

26    _____
             [4]     Basic work activities include: (1) walking, standing, sitting, lifting, pushing,
      pulling, reaching, carrying, or handling; (2) seeing, hearing, and speaking; (3) understanding,
27    carrying out, and remembering simple instructions; (4) use of judgment; (5) responding
      appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes
28    in a routine work setting. See 20 C.F.R. §§ 404.1521, 416.921.

                                              5

the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work.  See Social Security Ruling (SSR) 85-28; see also Yuckert v. Bowen, 841 F.2d 303, 306 (9th Cir. 1988) (adopting SSR 85-28).  The plaintiff has the burden of establishing the severity of the impairment by providing medical evidence consisting of signs, symptoms, and laboratory findings.  See 20 C.F.R. §§ 404.1508, 416.908. The plaintiff's own statement of symptoms alone is insufficient.  See id.

In concluding plaintiff's depression is not a severe impairment, the ALJ stated:

> The claimant also alleges depression.  The undersigned finds his medically determinable mental impairment of depression or dysthymic disorder does not cause more than minimal limitations in the claimant's ability to perform basic mental work activities and is therefore non-severe.  The record overall shows any symptoms of depressions are related to situations, such as job loss, changes in weather, financial stress, or some excessive alcohol use.  It demonstrates that treatment with psychiatric medications substantially improves his condition such that symptoms are found stable by treating sources and mild by evaluating sources.

CAR 627-28.

The ALJ outlined the following evidence of record supporting his severity determination:

• Medical records from June 2008 through January 2009 do not reflect any complaints of depression or other mental impairment.

• Plaintiff complained of depression in February 2009.

• Medical records from May 2009 do not reflect any complaints of depression or other mental impairment.

• Medical records from October 2009 reflect that plaintiff's depression had improved with medication.

• Medical records from 2010 show that plaintiff's depression was stable and by December 2010 treatment notes reflected marked improvement in plaintiff's depression with only low baseline dysthymia.

• In April 2011, consultative examining doctor Michael Maguire, Psy.D., noted unremarkable findings on mental status examination and assessed plaintiff's Global Assessment of Functioning ("GAF") to be 70 out of 100, indicating only mild symptoms affecting overall functioning.

• Medical records from 2011 through 2012 reflect that plaintiff's depression symptoms increased with alcohol use and subsided when plaintiff discontinued use of alcohol.

/ / /

6

• In January 2014, Dr. Weiner reported that plaintiff's depression symptoms were stable with current treatment.

• In January 2016, plaintiff reported doing better.

CAR 628-29.

The ALJ also noted consultative reviewing physicians Drs. Heldman and Scott both opined plaintiff's mental impairment is non-severe.  See id. 630 (citing Exhibits 1A, 2A, 5A, and 6A).

Plaintiff argues the ALJ erred with respect to his analysis of depression because he ignored opinions rendered by his treating therapist, Licensed Clinical Social Worker (LCSW) Patricia Lind.  According to plaintiff:

> . . .[T]he ALJ erred by failing to include without explanation any specific depression limitation in combination with his pain limitation, side-effects of medication, and loss of focus and concentration in his residual functional capacity finding findings (Tr. 632), because although the ALJ found that depression was "non-severe" at step 2 in the sequential evaluation of disability (Tr. 627-632), based on evidence that his "moderate" depression had medically improved and was stable with medication as of 2016 (Tr. 629-630, 1099-1103), treatment records by Ms. Patricia Lind, LCSW, with Redding Rancheria Tribal Health Center show that as of 3-9-16 that "The depression is associated with chronic pain (shoulder and neck pain)" (Tr. 1227), and Axis IV was noted to be "severe" and judgment was noted to be "Impaired ability to make reasonable decisions" (Tr. 1230), which the ALJ disregarded (Tr. 629-630), and the Regulations state that even non-severe limitations must be considered in combination with all other impairments at step 4 in the sequential evaluation of disability (20 Code of Federal Regulations section 404.1545(e), 416.945(e); Social Security Ruling 96-8p). Robbins v. Social Security Administration, 466 F.3d 880, 883 (9th Cir. 2006) ("In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record, including, inter alia, medical records, lay evidence, and 'the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment"). Social Security Rulings are binding at all levels of appeal (20 Code of Federal Regulations section 402.935(b)).

As to Ms. Lind, the ALJ stated:

> The claimant receives therapy by Patricia Lind, LCSW beginning December 2015, scheduled to end in July 2016, for major depressive disorder recurrent and moderate.  He reported his depression is aggravated by traumatic memories, relieved with warm weather, increased by chronic pain, irritability, and winter weather.  The claimant attributes the increase in his symptoms from withdrawal to Norco.  He reported taking Norco since 2008 for chronic shoulder pain, and that, having to put his dog down due to cancer, he took two Xanax from his mom to get through the grief, also drank some beer and that it showed up in his urine drug screen. . . .

7

* * *

Ms. Lind notes the claimant cooperative and engaged in therapy and in progress towards goals and objectives (Exhibit 24F/315-341, 12/2015-2/2016, in particular 24F/317, 320, 326, 332). Psychiatric findings are generally within normal [limits] but for occasional depressed mood or thought content; labile or flat affect; judgment is noted within normal but for impaired ability to make reasonable decisions (Exhibit 24F/323, 329, 335, 340).

CAR 629-30.

Citing CAR 1230, plaintiff contends the ALJ ignored Ms. Lind's opinion that plaintiff's ability to make reasonable decisions is impaired. The court finds no error.

Ms. Lind submitted a report on March 11, 2016. See CAR 1227-1231 (Exhibit 24F, records from Redding Rancheria Tribal Health Center). Regarding plaintiff's judgment, Ms. Lind stated: "Impaired ability to make reasonable decisions: Within normal limits." Id. at 1230. Contrary to plaintiff's assertion, this statement does not reflect a significant functional limitation given the therapist's conclusion plaintiff's judgement is within normal limits. Moreover, on mental status examination, Ms. Lind assessed plaintiff's thought process as logical, his intelligence as average, and his insight as also within normal limits. See id.

Ms. Lind also rendered an Axis IV diagnosis of "Severe." Id. This diagnosis, however, reflects stressors in plaintiff's life contributing to his mental impairment. For example, Ms. Lind cited the following in support of this diagnosis: (1) inability to engage in prior activities as a result of accident; (2) inability to engage in prior work as a result of accident; (3) living with parents; and (4) lack of income. See id. The court does not agree with plaintiff's assertion that Ms. Lind's Axis IV diagnosis represents an opinion as to functional capacity the ALJ improperly ignored.

**B.** **Evaluation of the Medical Opinions**

At Step 4, the ALJ evaluated the medical opinion evidence in determining plaintiff's physical residual functional capacity. See id. at 641-42. The ALJ gave "substantial weight" to the opinion of consultative examining physician, Dr. Siciarz, see id. at 641, "good weight" to the opinion of agreed medical examiner, Dr. Watkin, see id. at 642, and "little weight" to the opinions of treating physician, Dr. Weber, and consultative reviewing physicians, Drs.

8

1    Acinas and Kalen, see CAR 642.  Plaintiff argues the ALJ erred in giving controlling weight to

2    Dr. Siciarz's opinion while ignoring the opinion of his treating orthopedic surgeon, Dr. Verhoog.

3    Plaintiff also contend the ALJ erred by ignoring opinions offered by Physician's Assistant Fred

4    Herring.

5            The weight given to medical opinions depends in part on whether they are

6    proffered by treating, examining, or non-examining professionals.  See Lester v. Chater, 81 F.3d

7    821, 830-31 (9th Cir. 1995).  Ordinarily, more weight is given to the opinion of a treating

8    professional, who has a greater opportunity to know and observe the patient as an individual, than

9    the opinion of a non-treating professional.  See id.; Smolen v. Chater, 80 F.3d 1273, 1285 (9th

10   Cir. 1996); Winans v. Bowen, 853 F.2d 643, 647 (9th Cir. 1987).  The least weight is given to the

11   opinion of a non-examining professional.  See Pitzer v. Sullivan, 908 F.2d 502, 506 & n.4 (9th

12   Cir. 1990).

13           In addition to considering its source, to evaluate whether the Commissioner

14   properly rejected a medical opinion the court considers whether: (1) contradictory opinions are in

15   the record; and (2) clinical findings support the opinions.  The Commissioner may reject an

16   uncontradicted opinion of a treating or examining medical professional only for "clear and

17   convincing" reasons supported by substantial evidence in the record.  See Lester, 81 F.3d at 831.

18   While a treating professional's opinion generally is accorded superior weight, if it is contradicted

19   by an examining professional's opinion which is supported by different independent clinical

20   findings, the Commissioner may resolve the conflict.  See Andrews v. Shalala, 53 F.3d 1035,

21   1041 (9th Cir. 1995).

22           A contradicted opinion of a treating or examining professional may be rejected

23   only for "specific and legitimate" reasons supported by substantial evidence.  See Lester, 81 F.3d

24   at 830.  This test is met if the Commissioner sets out a detailed and thorough summary of the

25   facts and conflicting clinical evidence, states her interpretation of the evidence, and makes a

26   finding.  See Magallanes v. Bowen, 881 F.2d 747, 751-55 (9th Cir. 1989).  Absent specific and

27   legitimate reasons, the Commissioner must defer to the opinion of a treating or examining

28   professional.  See Lester, 81 F.3d at 830-31.  The opinion of a non-examining professional,

9

without other evidence, is insufficient to reject the opinion of a treating or examining professional.  See id. at 831.  In any event, the Commissioner need not give weight to any conclusory opinion supported by minimal clinical findings.  See Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir. 1999) (rejecting treating physician's conclusory, minimally supported opinion); see also Magallanes, 881 F.2d at 751.

### 1. Drs. Siciarz and Verhoog

As to Dr. Siciarz, the ALJ stated:

> In March 2016, orthopedic consulting examiner Dr. Kristoff Siciarz assessed the claimant's impairments and gave her prognosis of opinion of their effect – Dr. Siciarz assessed chronic strain of the neck and back, mildly limiting; right shoulder injury status post surgery with decreased range of motion; left shoulder rotator cuff tear, repaired with good improvement that will not limit activities; migraine headaches, self-limiting, and will not limit activities; bilateral carpal tunnel syndrome not considered a limitation with expectation of good improvement from surgery; and history of hypertension.  [The doctor] then opined the claimant could perform medium exertional work in that he can sit for eight hours of an eight hour day and can stand and walk for six hours of an eight hour day.  However he can lift and carry fifty pounds occasionally and twenty pounds frequently; can continuously finger feel, push and pull with both arms/hands; can handle frequently with both arms/hands; can occasionally reach and reach overhead with both arms; can frequently use feet for operation of foot controls; can frequently climb ramps and stairs; can never climb ladders, topes and scaffolds; can frequently balance; can occasionally bend, kneel, stoop, crouch, crawl; can occasionally work about hazards (dangerous machinery, unprotected heights, etc.); can frequently work in extreme temperatures, humidity, vibrations, fumes, odors, dust, gases, poor ventilation, etc., and drive a motor vehicle (Exhibit 25F/10-14).

> CAR 641.

The ALJ gave Dr. Siciarz's opinions controlling weight in this case, stating:

> . . .They are supported by the longitudinal record of care showing limited findings of abnormalities in repeated physical examinations, the findings in diagnostic testing and medical imagery – x-rays, MRIs of the back, shoulders and EMG testing.  They are supported by the good recovery from multiple surgeries, the finding of maximum medical improvement by Dr. Watkin, and the improvement shown in the treatment of residual symptoms by Drs. Weiner and Solonuick. . . .

> Id.

The ALJ also found Dr. Siciarz's opinions consistent with plaintiff's daily activities and evidence of some continuing work.  See id.

10

The ALJ discussed treatment records from Dr. Verhoog in the context of a detailed summary of the clinical observations relating plaintiff's shoulder impairments, which the ALJ found severe. See CAR 634-37. After noting Dr. Watkin's clinical findings regarding plaintiff's right shoulder, the ALJ discussed the evidence relating to plaintiff's left shoulder as follows:

> With regard to the left shoulder, there is a similar experience of pain developing, leading to findings of abnormalities that were surgically treated with good recovery, residual symptoms managed with medications and occasionally cortisone injections. The record shows that while there may be some continuing limitations on functioning, he is not completely/unable to use this [the left] arm. In February 2012, the claimant complains of pain in his left shoulder that he initially stated was due to overuse given his right shoulder condition. Later he stated the injury was due to a fall about six weeks previously. X-ray of his left shoulder in February 2012 showed no significant abnormality. March 2012 records indicate probable adhesive capsulitis. However, treating orthopedic surgeon Dr. Verhoog noted improvement in range of motion with forward flexion and increased abduction and external rotation. . . . With one month of physical therapy, the claimant had significant improvement in full passive range of motion. In May 2012, Dr. Verhoog notes improved forward active flexion of about 150 degrees and passively he goes to about 160 degrees. X-rays of the shoulder are normal but a MRI scan indicates a supraspinatus tendon tear. Dr. Verhoog suspects he will do very well from surgery based on MRI findings of his left shoulder. In May 2012, the claimant undergoes uncomplicated left shoulder rotator cuff repair and left shoulder anterior acromioplasty. He recovers well, achieving full active range of motion of the shoulder, only occasionally taking an anti-inflammatory by August 2012. In November 2012, he reports moderate pain in his shoulder but there are no significant findings other than bilateral shoulder decreased range of motion. Treatment consists of pain medication, medical notes indicating no significant side effects from medication. In April 2013, he reports continued discomfort keeping him awake at night. He presents with full active range of motion, but positive impingement sign and received a cortisone injection, Dr. Verhoog assessing bursitis. The injection is effective, repeated when the pain returns in September 2013, April and July 2014. MRI August 2014 shows retear of the supraspinatus tendon, with no muscle atrophy, which looks very fixable to Dr. Verhoog. Revision and repair surgery of the left shoulder occurs in October 2014. 2014-2015 office visits with Dr. Verhoog reported good progress and reestablishment of full active range of motion of the left shoulder (Ex. 18F-23F; 26F/7-25, 29-30).

> CAR 635-36.

/ / /

/ / /

/ / /

/ / /

Plaintiff argues the ALJ erred by failing to provide sufficient reasons for crediting Dr. Siciarz's opinions and by ignoring Dr. Verhoog's opinions. According to plaintiff:

> . . . Dr. Siciarz's opinion that he had only post right shoulder surgery with decreased range of motion is inconsistent and not well supported by the most recent 6-11-15 x-ray findings of his right shoulder that revealed a ". . . high riding humeral head which indicates a failed rotator cuff repair and early cuff tear arthopathy with early osteophyte formation on the inferior humeral head" (Tr. 1259) (20 Code of Federal Regulations section 404.1527(d)(3), 416.927(d)(3)). Plaintiff contends that the ALJ erred by failing to give greater weight to the opinion of Dr. Verhoog, his treating surgeon, that he continued to have failed right rotator cuff repair and early cuff tear arthropathy, which is supported by the most recent x-ray findings and supported by the record as a whole (Tr. 1259) (20 Code of Federal Regulations section 404.1527(d)(3), 416.927(d)(3)). Orn v. Astrue, 495 F.3d 625, 633-634 (9th Cir. 2007). Plaintiff contends that since the ALJ did not either explicitly reject or discredit the opinion by Dr. Verhoog, nor resolve the conflict between the opinion of Dr. Verhoog that that is supported by x-ray findings of failed right rotator cuff repair (Tr. 1259) and the opinion of Dr. Siciarz that he had only post right shoulder surgery with decreased range of motion, based on his clinical examination findings (Tr. 1244-1246), should be found to have erred by failing to set forth specific, legitimate reasons for crediting the opinion of Dr. Siciarz over the opinion by Dr. Verhoog. Garrison v. Colvin, 759 F.3f 995, 1012-1013 (9th Cir. 2014).

Specifically regarding Dr. Siciarz, plaintiff also argues:

> . . .[S]ubstantial evidence does not support the ALJ's finding that his carpal tunnel syndrome limits his residual functional capacity to for handling and fingering with the right hand to frequently (Tr. 632) because while Dr. Siciarz noted on 3-1-16 that plaintiff had undergone carpal tunnel surgery on the right and still had bandages on the right hand with inability to grasp (Tr. 1242, 1246) and determined that " . . . this will not be considered a limitation in the expectation that of good improvement from surgery," and in the meantime he had the capacity to frequently handle and continuously finger, feel and push/pull objects with the right hand (Tr. 1246, 1250), Dr. Siciarz noted that plaintiff's right hand could not be examined (Tr. 1245), such that without clinical findings an inference cannot reasonably be drawn that to support his opinion and he ALJ's residual functional capacity findings that he can frequently handle and continuously finger, feel and push/pull with the right hand. Widmark v. Barnhart, 454 F.3d 1063, 1068 (9th Cir. 2005).

Plaintiff's arguments are unpersuasive because he has not identified any opinions rendered by Dr. Verhoog regarding functional capacity which should have been given greater weight. While plaintiff references a number of observations made by the doctor, such as x-ray findings and evidence of damage related to plaintiff's rotator cuff injuries, these observations are not opinions.

2.    Mr. Herring

According to plaintiff:

> . . .[T]e ALJ should be found to have erred by disregarding without explanation the statement by Mr. Fred Herring, physician's assistant and provider of services along with Dr. Weiner and Dr. Soloniuk at Redding Rancheria Tribal Health Center from 2-23-15 to1-28-16 (Tr. 918-971) that although plaintiff could work at a desk job with improvement in his physical condition, his impairments and treatment would cause him to be absent from work "about four days per month" depending on his " . . . tolerance to pain and type of work performed" (Tr. 1284) (20 Code of Federal Regulations sections 404.1513(d)(1), 416.913(d)(1)). Benton Ex Rel. v. Barnhart, 331 F.3d 1030, 1036-1037 (9th Cir. 2003); citing Shontos v. Barnhart, 322 F.3d 532, 539.540 (8th Cir. 2003).

Plaintiff misstates Mr. Herring's report.  Mr. Herring concluded plaintiff "could sit/stand position of comfort and could perform desk job."  CAR 1284 (Exhibit 27F).  Mr. Herring also reported plaintiff "could perform physical labor with improvement in physical conditioning and weight loss."  Id.  As to anticipated absences from work, Mr. Herring acknowledged that his opinion is "very subjective and depends solely on individual's tolerance to pain and type of work performed."  Setting aside the speculative nature of this statement, the court cannot say it represents an opinion as to functional capacity, such that the ALJ erred in not discussing that opinion.

**C.    Credibility Assessment**

At Step 4, the ALJ assessed plaintiff's credibility in evaluating his residual functional capacity.  See CAR 633-34, 640.  The Commissioner determines whether a disability applicant is credible, and the court defers to the Commissioner's discretion if the Commissioner used the proper process and provided proper reasons.  See Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1996).  An explicit credibility finding must be supported by specific, cogent reasons.  See Rashad v. Sullivan, 903 F.2d 1229, 1231 (9th Cir. 1990).  General findings are insufficient.  See Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1995).  Rather, the Commissioner must identify what testimony is not credible and what evidence undermines the testimony.  See id.  Moreover, unless there is affirmative evidence in the record of malingering, the Commissioner's reasons for rejecting testimony as not credible must be "clear and convincing."  See id.; see also Carmickle v.

Commissioner, 533 F.3d 1155, 1160 (9th Cir. 2008) (citing Lingenfelter v Astrue, 504 F.3d 1028, 1936 (9th Cir. 2007), and Gregor v. Barnhart, 464 F.3d 968, 972 (9th Cir. 2006)).

If there is objective medical evidence of an underlying impairment, the Commissioner may not discredit a claimant's testimony as to the severity of symptoms merely because they are unsupported by objective medical evidence.  See Bunnell v. Sullivan, 947 F.2d 341, 347-48 (9th Cir. 1991) (en banc).  As the Ninth Circuit explained in Smolen v. Chater:

> The claimant need not produce objective medical evidence of the [symptom] itself, or the severity thereof.  Nor must the claimant produce objective medical evidence of the causal relationship between the medically determinable impairment and the symptom.  By requiring that the medical impairment "could reasonably be expected to produce" pain or another symptom, the Cotton test requires only that the causal relationship be a reasonable inference, not a medically proven phenomenon.

> 80 F.3d 1273, 1282 (9th Cir. 1996) (referring to the test established in Cotton v. Bowen, 799 F.2d 1403 (9th Cir. 1986)).

The Commissioner may, however, consider the nature of the symptoms alleged, including aggravating factors, medication, treatment, and functional restrictions.  See Bunnell, 947 F.2d at 345-47.  In weighing credibility, the Commissioner may also consider: (1) the claimant's reputation for truthfulness, prior inconsistent statements, or other inconsistent testimony; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; (3) the claimant's daily activities; (4) work records; and (5) physician and third-party testimony about the nature, severity, and effect of symptoms.  See Smolen, 80 F.3d at 1284 (citations omitted).  It is also appropriate to consider whether the claimant cooperated during physical examinations or provided conflicting statements concerning drug and/or alcohol use.  See Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002).  If the claimant testifies as to symptoms greater than would normally be produced by a given impairment, the ALJ may disbelieve that testimony provided specific findings are made.  See Carmickle, 533 F.3d at 1161 (citing Swenson v. Sullivan, 876 F.2d 683, 687 (9th Cir. 1989)).

Regarding reliance on a claimant's daily activities to find testimony of disabling pain not credible, the Social Security Act does not require that disability claimants be utterly incapacitated.  See Fair v. Bowen, 885 F.2d 597, 602 (9th Cir. 1989).  The Ninth Circuit has

repeatedly held that the "... mere fact that a plaintiff has carried out certain daily activities ... does not ...[necessarily] detract from her credibility as to her overall disability." See Orn v. Astrue, 495 F.3d 625, 639 (9th Cir. 2007) (quoting Vertigan v. Heller, 260 F.3d 1044, 1050 (9th Cir. 2001)); see also Howard v. Heckler, 782 F.2d 1484, 1488 (9th Cir. 1986) (observing that a claim of pain-induced disability is not necessarily gainsaid by a capacity to engage in periodic restricted travel); Gallant v. Heckler, 753 F.2d 1450, 1453 (9th Cir. 1984) (concluding that the claimant was entitled to benefits based on constant leg and back pain despite the claimant's ability to cook meals and wash dishes); Fair, 885 F.2d at 603 (observing that "many home activities are not easily transferable to what may be the more grueling environment of the workplace, where it might be impossible to periodically rest or take medication"). Daily activities must be such that they show that the claimant is "...able to spend a substantial part of his day engaged in pursuits involving the performance of physical functions that are transferable to a work setting." Fair, 885 F.2d at 603. The ALJ must make specific findings in this regard before relying on daily activities to find a claimant's pain testimony not credible. See Burch v. Barnhart, 400 F.3d 676, 681 (9th Cir. 2005).

As to plaintiff's credibility, the ALJ stated:

> The claimant alleged he is unable to work due to a torn right rotator cuff with a history of three surgeries on this shoulder. The claimant stated he has problems reaching, lifting, and using his arm/hands. He asserted he can only raise his arm at shoulder height. He alleged in June 2011 worsening left shoulder pain, and being stiff, unable to use his right arm in any significant manner as all use causes severe right shoulder pain. He stated he can walk ½ mile, lift about 10-15 pounds, cannot reach at all with his right arm, and his right hand is numb. He can stand about five to ten minutes and then sit for 10 to 15 minutes and then needs to sit or walk about. He estimates he can walk about 100 feet slowly. He used no assistive device to walk such as a cane or walker. In April 2012, he reported more severe shoulder pain. He also had neck pain down to his elbow. He reported weight gain and that he does not use his right arm. He also stated he has had balance problems since December 2011 (Exhibit 1E, 2E, 4E, 6E, 8E).

> * * *

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence, and limiting effects of

these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.

CAR 633-34.

Regarding plaintiff's statements and testimony concerning mental impairment, the ALJ stated: "The claimant's allegations of persistent and intense symptoms and limitations from his mental impairments are out of proportion to the medical evidence of record which demonstrates he has mild depression from various situations in life, that is under control with appropriate use of medication and avoidance of excessive alcohol." CAR 630. The ALJ also stated: "Overall the undersigned finds the evidence of inconsistencies does not substantiate his testimony that he does little to nothing, either from mental symptoms or his physical impairments." Id. at 640. Finally, the ALJ stated:

> Lastly, his allegations are challenged by the opinions of record from examining and evaluating physicians. These show that the claimant, while facing some limits in working capacities, still retains significant functionality to work.

Id.

Plaintiff argues the reasons provided by the ALJ are not supported by substantial evidence. According to plaintiff:

> . . .[T]he results of numerous laboratory tests support his allegations of having chronic severe pain, weakness, and difficulty functioning with the right arm despite pain management through 12-22-15 (Tr. 1078, 1081, 1082, 1090, 12-5-1230, 1094, 1088-1090, 1298-1201, 1202-1204), and after several surgeries to his right shoulder, he continues to have a medically determinable impairment of right rotator cuff tear arthropathy (Tr. 1259) (20 Code of Federal Regulations section 404.1529(b), 416.929(b)). Plaintiff contends that substantial evidence should be found not to support the ALJ's repeated statements and findings that plaintiff had ". . . good recovery from shoulder and hand surgical interventions" (Tr. 639) and that his pain symptoms are "well-controlled" by medication treatment (Tr. 643) that has resulted in right shoulder ". . . improvement and stability, enabling good functioning" (Tr. 634, 636, 638, 642). Garrison v. Colvin, supra, 759 F.3d 995, 1015).
> Plaintiff similarly contends that the ALJ erred by discrediting his pain allegation on the basis of his daily activities such as going to the post office, shopping in stores, going to movies with friends and doing car repair that was inferred form [sic] grease on his hands along with his reported history of being a good car mechanic (Tr. 640), because the ALJ did not make any findings as to whether these activities occupied a substantial part of the day and gave him transferable skills. Id. at 1015-1016; Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989).

16

* * *

Plaintiff contends that in light of his history of multiple unsuccessful surgeries on his right shoulder, the current laboratory test results that revealed he continues to have a right rotator cuff tear, and in the absence of affirmative evidence of malingering, the ALJ should be found to have erred by failing to set forth clear and convincing reasons to discredit his allegations of having chronic pain in his right shoulder and associated functional limitations. Garrison v. Colvin, supra, 759 F.3d at 1015-1016; Robbins v. Social Security Administration, 446 F.3d 880, 883-884 (9th Cir. 2006).

Plaintiff's contentions are unpersuasive. Evidence plaintiff "continues to have a medically determinable impairment of right rotator cuff tear arthropathy" does not undermine the ALJ's finding plaintiff had good recovery and improvement in functioning following surgeries. The relevant inquiry in determining residual functional capacity is what a person can do despite limitations, not whether the person has medically determinable impairments. See 20 C.F.R. §§ 404.1545(a), 416.945(a) (2003); see also Valencia v. Heckler, 751 F.2d 1082, 1085 (9th Cir. 1985) (residual functional capacity reflects current "physical and mental capabilities"). The ALJ's reference to good recovery and improvement is a legally valid reason to discount plaintiff's allegations of disabling symptoms. See Smolen, 80 F.3d at 1284.

As to reliance on daily activities, even if ALJ improperly relied on evidence he worked as a car mechanic in 2014, absent evidence as to whether such work occupied a substantial part of plaintiff's day, the ALJ nonetheless relied on sufficient reasoning, discussed above. Any error is, therefore, harmless because it is inconsequential to the ultimate decision. See Batson v. Commissioner of Social Security, 359 F.3d 1190 (9th Cir. 2004).

D.     **Evaluation of Lay Witness Evidence**

At Step 4, the ALJ considered lay witness evidence provided by plaintiff's mother, Patricia Rhoades, plaintiff's father, Leland Rhoades, plaintiff's uncle, John Rhoades, and plaintiff's best friend, Robin Morris. See CAR 633, 643. As to this evidence, the ALJ stated:

The undersigned also considered the third party statements. Patricia Rhoades, the claimant's mother with whom he lives, stated he gets up early. Talks on the phone with friends, sometimes visits with friends or goes to the movie with them, watches a lot of TV, showers, etc. He needs help buttoning his pants. She helps him take care of his dog. She reminds him to take his medications. He can help with the dishes. He drives a car.

17

He shops in stores and by phone for clothes and books. He cannot hunt or fish anymore but enjoys playing with remote control cars in the back yard, reading, going to the movies/watching TV, and visiting with friends. He handles money without difficulty. She stated he cannot sleep on his right side so sometimes wakes up if he rolls over. She stated he is very depressed since his accident and stays home most of the time. However, the undersigned finds this inconsistent with her other statements that the claimant enjoys visiting with friends, going to the movies, shopping, and playing with remote control cars (Exhibit 3E).

John Rhoades, the claimant's uncle stated the claimant can no longer run a Running Skidder as all the controls are on the right side and cannot reach them. He feels the claimant is very depressed. He stated the claimant does not sleep well. Robin Morris, the claimant's best friend, states he sees the claimant three to four times per week and text each other frequently. He feels the claimant has trouble lifting and that he was happy and a hard worker before he was hurt. He feels the claimant has more bad than good days. Leland Rhoades, the claimant's father stated, before the accident, he did many things with his son such as fishing and hunting and the claimant was a good mechanic. He stated the claimant cannot do these things anymore. He feels the claimant is very depressed and that he feels useless because he cannot do the things he used to do. Patricia Rhoades, the claimant's mother stated in another report that the claimant has changes since the accident and is depressed. She states he does not sleep more than three to four hours at night. However, he does sleep on the couch during the day. He wishes he could go back to work on the skidder (Exhibit 9E-12E).

* * *

In considering the evidence from "non-medical sources" who have not seen the individual in a professional capacity in connection with their impairments, such as spouses, parents, friends, and neighbors, it is appropriate to consider such factors as the nature and extent of the relationship, whether the evidence is consistent with other evidence, and any other factors that tend to support or refute the evidence (SSR [Social Security Ruling] 06-03p). The lay witness claims are similar to the claimant's allegations; the undersigned acknowledges the reported limitations on activities of daily living, social functioning, and capacity to focus, respond appropriately to instructions, accomplish tasks from the claimant's mother Ms. Rhoades, the claimant's friend, Ms. Morris, the claimant's uncle, Mr. John Rhoades, and the claimant's father, Mr. Leland Rhoades (Exhibit 3E, 9E-13E). However, they are not fully supported by the evidence that is, the objective findings, diagnostic testing and medical imagery, and longitudinal record of care reviewed above. In addition, they are accorded no weight as an opinion on his functionality, none of these individuals being an acceptable medical source.

CAR 633, 643.

In determining whether a claimant is disabled, an ALJ generally must consider lay witness testimony concerning a claimant's ability to work. See Dodrill v. Shalala, 12 F.3d 915,

919 (9th Cir. 1993); 20 C.F.R. §§ 404.1513(d)(4) & (e), 416.913(d)(4) & (e).  Indeed, "lay

testimony as to a claimant's symptoms or how an impairment affects ability to work is competent

evidence . . . and therefore cannot be disregarded without comment."  See Nguyen v. Chater, 100

F.3d 1462, 1467 (9th Cir. 1996).  Consequently, "[i]f the ALJ wishes to discount the testimony of

lay witnesses, he must give reasons that are germane to each witness."  Dodrill, 12 F.3d at 919.

The ALJ may cite same reasons for rejecting plaintiff's statements to reject third-party statements

where the statements are similar.  See Valentine v. Commissioner Soc. Sec. Admin., 574 F.3d

685, 694 (9th Cir. 2009) (approving rejection of a third-party family member's testimony, which

was similar to the claimant's, for the same reasons given for rejection of the claimant's

complaints).

    The ALJ, however, need not discuss all evidence presented.  See Vincent on

Behalf of Vincent v. Heckler, 739 F.2d 1393, 1394-95 (9th Cir. 1984).  Rather, he must explain

why "significant probative evidence has been rejected."  Id. (citing Cotter v. Harris, 642 F.2d 700,

706 (3d Cir.1981).  Applying this standard, the court held that the ALJ properly ignored evidence

which was neither significant nor probative.  See id. at 1395.  As to a letter from a treating

psychiatrist, the court reasoned that, because the ALJ must explain why he rejected

uncontroverted medical evidence, the ALJ did not err in ignoring the doctor's letter which was

controverted by other medical evidence considered in the decision.  See id.  As to lay witness

testimony concerning the plaintiff's mental functioning as a result of a second stroke, the court

concluded that the evidence was properly ignored because it "conflicted with the available

medical evidence" assessing the plaintiff's mental capacity.  Id.

    In Stout v. Commissioner, the Ninth Circuit recently considered an ALJ's silent

disregard of lay witness testimony.  See 454 F.3d 1050, 1053-54 (9th Cir. 2006).  The lay witness

had testified about the plaintiff's "inability to deal with the demands of work" due to alleged back

pain and mental impairments.  Id.  The witnesses, who were former co-workers testified about

the plaintiff's frustration with simple tasks and uncommon need for supervision.  See id.  Noting

that the lay witness testimony in question was "consistent with medical evidence," the court in

Stout concluded that the "ALJ was required to consider and comment upon the uncontradicted lay

19

testimony, as it concerned how Stout's impairments impact his ability to work." Id. at 1053.
The Commissioner conceded that the ALJ's silent disregard of the lay testimony contravened
Ninth Circuit case law and the controlling regulations, and the Ninth Circuit rejected the
Commissioner's request that the error be disregarded as harmless. See id. at 1054-55. The court
concluded:

> Because the ALJ failed to provide any reasons for rejecting competent lay
> testimony, and because we conclude that error was not harmless,
> substantial evidence does not support the Commissioner's decision . . .

> Id. at 1056-67.

From this case law, the court concludes that the rule for lay witness testimony
depends on whether the testimony in question is controverted or consistent with the medical
evidence. If it is controverted, then the ALJ does not err by ignoring it. See Vincent, 739 F.2d at
1395. If lay witness testimony is consistent with the medical evidence, then the ALJ must
consider and comment upon it. See Stout, 454 F.3d at 1053. However, the Commissioner's
regulations require the ALJ consider lay witness testimony in certain types of cases. See Smolen
v. Chater, 80 F.3d 1273, 1288 (9th Cir. 1996); SSR 88-13. That ruling requires the ALJ to
consider third-party lay witness evidence where the plaintiff alleges pain or other symptoms that
are not shown by the medical evidence. See id. Thus, in cases where the plaintiff alleges
impairments, such as chronic fatigue or pain (which by their very nature do not always produce
clinical medical evidence), it is impossible for the court to conclude that lay witness evidence
concerning the plaintiff's abilities is necessarily controverted such that it may be properly
ignored. Therefore, in these types of cases, the ALJ is required by the regulations and case law to
consider lay witness evidence.

According to plaintiff:

> . . .[T]he ALJ erred by discrediting and giving no weight to the
> third party statements (Tr. 633), which corroborated his testimony that he
> had limitations on daily activities, social functioning and capacity to focus,
> respond appropriately to instructions, and accomplish tasks (Tr. 643), in
> part on the grounds that they were not supported by the objective findings,
> diagnostic testing and medical imagery, and the longitudinal record,
> whereas the record shows he has undergone multiple right shoulder
> surgeries and the most recent x-ray findings reveals he continues to have
> rotator cuff tear of the right shoulder, and in part on the ALJ statement that

20

as to their ". . . opinion on his functionality, none of these individuals being an acceptable medical source" (Tr. 643), because the Regulations state that other non-medical source information from relatives is competent evidence to show severity of impairments and how it affects ability to work" (20 Code of Federal Regulations section 404.1513(d)(4), 416.913(d)(4)). <u>Smolen v. Chater</u>, 80 F.3d 1273, 1288-1289 (9th Cir. 1996) ("Having been directed to consider the testimony of lay witnesses in determining a claimant's disability, the ALJ can reject the testimony of lay witnesses only if he gives germane reasons to each witness who testimony he rejects"); <u>Dodrill v. Shalala</u>, 12 F.3d 915, 918 (9th Cir. 1993).

The ALJ does not err where, as here, he cites the same legally sufficient reasons for rejecting third-party evidence as he does for rejecting plaintiff's statements and testimony.  See <u>Valentine</u>, 574 F.3d at 694.

### E. <u>Vocational Findings</u>

At Step 5, the ALJ made vocational findings as to plaintiff's ability to perform other work given his residual functional capacity.  See CAR 644-46.  In so doing, the ALJ accepted evidence in the form of testimony by a vocational expert.  See <u>id.</u>  The ALJ accepted the vocational expert's testimony that plaintiff can perform work as a counter clerk, school bus monitor, dealer accounts investigator, scaling machine operator, and blending tank operator.  See <u>id.</u> at 645.  In evaluating the vocational evidence, the ALJ stated:

> The hypotheticals presented to the vocational expert included a limitation to simple routine tasks, i.e., unskilled work.  The undersigned finds based on the record overall that the evidence supports a finding that there are no severe mental impairments nor any need to limit the claimant to simple routine tasks.  This difference between the hypothetical posed to the vocational expert and the residual functional capacity established above does not substantially affect the testimony of the vocational expert that jobs exist in significant numbers in the occupations provided, all of which are unskilled, skilled vocational performance 2. . . .

> <u>Id.</u>

The Medical-Vocational Guidelines (Grids) provide a uniform conclusion about disability for various combinations of age, education, previous work experience, and residual functional capacity.  The Grids allow the Commissioner to streamline the administrative process and encourage uniform treatment of claims based on the number of jobs in the national economy for any given category of residual functioning capacity.  See <u>Heckler v. Campbell</u>, 461 U.S. 458, 460-62 (1983) (discussing creation and purpose of the Grids).

21

1  ///

2  ///

3        The Commissioner may apply the Grids in lieu of taking the testimony of a

4  vocational expert only when the Grids accurately and completely describe the claimant's abilities

5  and limitations.  See Jones v. Heckler, 760 F.2d 993, 998 (9th Cir. 1985); see also Heckler v.

6  Campbell, 461 U.S. 458, 462 n.5 (1983).  Thus, the Commissioner generally may not rely on the

7  Grids if a claimant suffers from non-exertional limitations because the Grids are based on

8  exertional strength factors only.[5]  See 20 C.F.R., Part 404, Subpart P, Appendix 2, § 200.00(b).

9  "If a claimant has an impairment that limits his or her ability to work without directly affecting

10  his or her strength, the claimant is said to have non-exertional . . . limitations that are not covered

11  by the Grids."  Penny v. Sullivan, 2 F.3d 953, 958 (9th Cir. 1993) (citing 20 C.F.R., Part 404,

12  Subpart P, Appendix 2, § 200.00(d), (e)).  The Commissioner may, however, rely on the Grids

13  even when a claimant has combined exertional and non-exertional limitations, if non-exertional

14  limitations do not impact the claimant's exertional capabilities.  See Bates v. Sullivan, 894 F.2d

15  1059, 1063 (9th Cir. 1990); Polny v. Bowen, 864 F.2d 661, 663-64 (9th Cir. 1988).

16        In cases where the Grids are not fully applicable, the ALJ may meet his burden

17  under step five of the sequential analysis by propounding to a vocational expert hypothetical

18  questions based on medical assumptions, supported by substantial evidence, that reflect all the

19

20  _____

21        [5]     Exertional capabilities are the primary strength activities of sitting, standing,
walking, lifting, carrying, pushing, or pulling and are generally defined in terms of ability to
perform sedentary, light, medium, heavy, or very heavy work.  See 20 C.F.R., Part 404, Subpart

22  P, Appendix 2, § 200.00(a).  "Sedentary work" involves lifting no more than 10 pounds at a time
and occasionally lifting or carrying articles like docket files, ledgers, and small tools.  See 20

23  C.F.R. §§ 404.1567(a) and 416.967(a).  "Light work" involves lifting no more than 20 pounds at
a time with frequent lifting or carrying of objects weighing up to 10 pounds.  See 20 C.F.R. §§

24  404.1567(b) and 416.967(b).  "Medium work" involves lifting no more than 50 pounds at a time
with frequent lifting or carrying of objects weighing up to 25 pounds.  See 20 C.F.R. §§

25  404.1567(c) and 416.967(c).  "Heavy work" involves lifting no more than 100 pounds at a time
with frequent lifting or carrying of objects weighing up to 50 pounds.  See 20 C.F.R. §§

26  404.1567(d) and 416.967(d).  "Very heavy work" involves lifting objects weighing more than 100
pounds at a time with frequent lifting or carrying of objects weighing 50 pounds or more.  See 20

27  C.F.R. §§ 404.1567(e) and 416.967(e).  Non-exertional activities include mental, sensory,
postural, manipulative, and environmental matters which do not directly affect the primary

28  strength activities.  See 20 C.F.R., Part 404, Subpart P, Appendix 2, § 200.00(e).

plaintiff's limitations.  See Roberts v. Shalala, 66 F.3d 179, 184 (9th Cir. 1995).  Specifically, where the Grids are inapplicable because plaintiff has sufficient non-exertional limitations, the

/ / /

ALJ is required to obtain vocational expert testimony.  See Burkhart v. Bowen, 587 F.2d 1335, 1341 (9th Cir. 1988).

Hypothetical questions posed to a vocational expert must set out all the substantial, supported limitations and restrictions of the particular claimant.  See Magallanes v. Bowen, 881 F.2d 747, 756 (9th Cir. 1989).  If a hypothetical does not reflect all the claimant's limitations, the expert's testimony as to jobs in the national economy the claimant can perform has no evidentiary value.  See DeLorme v. Sullivan, 924 F.2d 841, 850 (9th Cir. 1991).  While the ALJ may pose to the expert a range of hypothetical questions based on alternate interpretations of the evidence, the hypothetical that ultimately serves as the basis for the ALJ's determination must be supported by substantial evidence in the record as a whole.  See Embrey v. Bowen, 849 F.2d 418, 422-23 (9th Cir. 1988).

Plaintiff argues the ALJ erred by failing to include in hypothetical questions posed to the vocational expert limitations related to the side-effects of medication.  According to plaintiff:

> . . .[T]he ALJ should be found to have erred by failing to include in his hypothetical questions without explanation the combination of limitations of chronic pain and side-effects of his pain medications because the record shows that plaintiff testified that the main problem that kept him from working was pain in his right shoulder (Tr. 668-669) despite taking Hydrocodone six times a day and OxyContin three times a day for pain (Tr. 666-667) that he testified caused side-effects of drowsiness and loss of focus (Tr. 673, 675), the ladder [sic] of which the ALJ did not discredit and are supported by extensive records from the Redding Rancheria Tribal Health Center that show he needed pain management. Robbins v. Social Security Administration, supra, 466 F.3d at 886 ("An ALJ must propose a hypothetical that is based on medical assumptions supported by substantial evidence in the record that reflects each of the claimant's limitations"); citing Osenbrock v. Apfel, 240 F.3d 1157, 1163 (9th Cir. 2001); Light v. Social Security Administration, 119 F.3d 789, 793 (9th Cir. 1997) ("While the ALJ need not include all claimed impairments in his hypotheticals, he must make specific findings explaining his rationale for disbelieving any of the claimant's subjective complaints not included in the hypothetical").

/ / /

1   / / /

2   / / /

3   / / /

4          As to fatigue, the ALJ made the following finding at Step 2 – which plaintiff does

5   not challenge – in determining this impairment is not severe:

6          . . .Treatment records show occasionally the claimant reporting insomnia,
       which Dr. Weiner relates to his high BMI [Body Mass Index, a measure of
7       obesity], as well as alcohol use.  The claimant is treated and reports
       improvement with Seroquel (Exhibit 24F/238-41, 3/2015; 24F/192-195,
8       12/2015).  The record shows no referral for sleep studies.

9          CAR 627.

10  Plaintiff testified at the April 7, 2016, hearing: "Well, when you're fatigued, you don't have

11  concentration."  CAR  675.  He also testified he has poor energy.  See id.  This evidence does not

12  undermine the ALJ's Step 2 severity finding, which is supported by plaintiff's only occasional

13  reports of fatigue, a lack of significant treatment, and the medical opinion evidence regarding

14  plaintiff's level of mental functioning.

15          **F.      Remand for Consideration of New Evidence**

16          A case may be remanded to the agency for the consideration of new evidence if the

17  evidence is material and good cause exists for the absence of the evidence from the prior record.

18  See Sanchez v. Secretary of Health and Human Services, 812 F.2d 509, 511-12 (9th Cir. 1987)

19  (citing 42 U.S.C. § 405(g)).  In order for new evidence to be "material," the court must find that,

20  had the agency considered this evidence, the decision might have been different.  See Clem v.

21  Sullivan, 894 F.2d 328, 332 (9th Cir. 1990).  The court need only find a reasonable possibility

22  that the new evidence would have changed the outcome of the case.  See Booz v. Secretary of

23  Health and Human Services, 734 F.2d 1378, 1380-81 (9th Cir. 1984).  The new evidence,

24  however, must be probative of the claimant's condition as it existed at or before the time of the

25  disability hearing.  See Sanchez 812 F.2d at 511 (citing 42 U.S.C. § 416(i)(2)(G)).  In Sanchez,

26  the court concluded that the new evidence in question was not material because it indicated "at

27  most, mental deterioration after the hearing, which would be material to a new application, but

28

not probative of his condition at the hearing." Id. at 512 (citing Ward v. Schweiker, 686 F.2d 762, 765-66 (9th Cir. 1982)).

///

///

Plaintiff argues the matter should be remanded to allow the agency to consider new evidence, specifically a report of a July 27, 2016, MRI of plaintiff's right shoulder, as well as an October 21, 2016, report by Dr. Paul Davis. These documents, however, are not probative of plaintiff's condition as it existed at or before the time of the disability hearing in this case, which was held on April 7, 2016. See Sanchez 812 F.2d at 511. Therefore, a remand for consideration of this evidence in the context of the current application is not warranted.

# IV. CONCLUSION

Based on the foregoing, the court concludes that the Commissioner's final decision is based on substantial evidence and proper legal analysis. Accordingly, IT IS HEREBY ORDERED that:

1.     Plaintiff's motion for summary judgment (Doc. 16) is denied;

2.     Defendant's motion for summary judgment (Doc. 19) is granted;

3.     The Commissioner's final decision is affirmed; and

4.     The Clerk of the Court is directed to enter judgment and close this file.


Dated:  September 26, 2018

DENNIS M. COTA
UNITED STATES MAGISTRATE JUDGE